Paul A. Conant, 012667
**CONANT LAW FIRM, PLC**
Northern Trust Bank Tower, Suite 925
2398 East Camelback Road
Phoenix, Arizona 85016
Telephone: 602.508.9010
Facsimile:  602.508.9015
Email: docket@conantlawfirm.com
        Attorneys for plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medbox, Inc., a Nevada corporation, | Case No. 2:13-cv-00949-GMS |
| plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| Darryl B. Kaplan, an individual; Claudio Tartaglia, an individual; and Eric Kovan, an individual, | (BREACH OF CONTRACT, CONVERSION, ARIZONA SECURITIES ACT VIOLATIONS, FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION, ARIZONA CONSUMER FRAUD ACT VIOLATIONS) |
| defendants. | |

This is a civil action by plaintiff Medbox, Inc. against defendants for breach of a Membership Interest Purchase Agreement dated March 12, 2013 and which was supposed to be closed in Phoenix, Arizona, conversion of $600,000 wrongfully retained by defendants, and for relief under the Arizona Securities Act for statutory anti-fraud provision violations by defendants and related claims. Plaintiff amends its original complaint hereby, as of right, pursuant to Rule 15(a)(1), Fed. R. Civ. P.

-1-

# I.  The Parties, Venue and Jurisdiction.

1.      Plaintiff Medbox, Inc. is a Nevada corporation with its principal offices in California and Arizona.

2.      Defendants are, on information and belief, residents of the State of Michigan, whose names are: Darryl B. Kaplan, Claudio Tartaglia and Eric Kovan.

3.      There is complete diversity of citizenship between, on one hand, the plaintiff and, on the other hand, the defendants.

4.      The amount in controversy of $600,000 exceeds the jurisdictional limit in this Court for diversity actions.

5.      Jurisdiction is proper pursuant to 28 USC 1332(a)(1).

6.      Venue is proper in this judicial district under 28 U.S.C. Sections 1391(b)(2).

**7.**      Personal jurisdiction over defendants in this district, and venue in this district, is proper because defendants' retained legal counsel in this district to negotiate the subject agreement with plaintiff, plaintiff has executive offices in this district, the closing of the subject transaction was supposed to occur in this district, and the effect of the defendants' actions and omissions as alleged herein is and has been felt by plaintiff in this district.

8.      Defendants' purposeful conduct targeting Arizona includes: (a) undertaking to draft the subject Agreement within Arizona; (b) providing in the subject Agreement for the "Closing" of the transaction to occur in Arizona; (c) including a notice provision in the subject Agreement providing for notice to defendants to be provided in Arizona; (d)

1  accepting communications from plaintiff and issuing communications to plaintiff

2  concerning the negotiation of the subject Agreement from within Arizona; (e) entering into

3  a transaction with Medbox, which maintains executive offices within Arizona, actively

4  conducts business within Arizona, and whose Chief Executive Officer resides and works in

5  and from Arizona, and (f) performance by Medbox was contemplated to occur within

6  Arizona.

7       9.    There is a nexus between defendants' Arizona contacts and the claims asserted

8  in that: (a) Medbox maintains executive offices in the State of Arizona; (b) Medbox's Chief

9  Executive Officer resides and works within the State of Arizona; (c) Medbox conducts

10  substantial business within the State of Arizona; (d) the parties' Agreement was drafted

11  within the State of Arizona by defendants' Arizona legal counsel; (e) the subject Agreement

12  contemplates both a "Closing" within Arizona and notice to defendants under the specific

13  terms of the subject Agreement to be provided in Arizona; (f) the subject Agreement

14  contemplates substantial interaction with Medbox within the State of Arizona due to

15  Medbox's business and executive presence within the State of Arizona;(g) the termination

16  letter concerning this matter was required to be delivered in Arizona, and was accepted by

17  defendants within Arizona, in accord with the subject Agreement;  and, (h) Medbox's

18  claims arise in substantial part from defendants' Arizona contacts.

19       10.    The exercise of jurisdiction over plaintiffs would be reasonable because there

20  is no unreasonable burden on defendants to litigate plaintiff's claim in Arizona since: (a)

21  defendants' counsel resides and works within Arizona, (b) the files used, maintained and

22

developed by defendants' counsel in connection with the drafting and completion of the Agreement are, on information and belief, maintained within Arizona; (c) defendants' Arizona transactional counsel is a key trial witness in connection with this matter and may be subpoenaed within Arizona where he lives and works; (d) the subject Agreement was drafted by defendants' counsel from within Arizona; (e) the subject Agreement contemplated performance by the parties within Arizona, a "Closing" to occur within Arizona and mandatory notice to defendants to be provided within Arizona.

## II. Claims For Relief.

### First Claim For Relief: Breach of Contract

11.   On or about March 12, 2013, plaintiff and defendants executed the "Membership Interest Purchase Agreement", a true and correct copy of which is attached to the Complaint (Doc. 1) in this matter as Exhibit 1 ("Agreement").

12.   The parties contemplated a closing, as set forth in the Agreement, in Phoenix, Arizona. See Agreement Section 2.05.

13.   Pursuant to the terms of the Agreement, and in good faith anticipation of performing under the Agreement and closing the Agreement, Medbox paid over to defendants the sum of $600,000.

14.   On May 7, 2013, Medbox was notified for the first time that representations and warranties made by the defendants (denominated as "Sellers" under the Agreement) were untrue, incorrect, and false when Medbox received a copy of a lawsuit filed in Oakland County, Michigan by Envy Tech Fund I, LLC and Envy-Medvend Loan Fund, LLC, a true

1    and correct copy of which is attached to the Complaint (Doc. 1) in this matter as Exhibit 2

2    (the "Envy-Tech suit").

3         15.    The gist of the Envy-Tech suit is that the Sellers under the Agreement

4    (defendants herein) were unable to, among other things, truthfully represent to Medbox, Inc.

5    that the transfer to Medbox of what was identified in the Agreement as their "Transferred

6    Equity Interests"  would not (contrary to their representations in Agreement Section 3.03):

7    "(a) violate, conflict with or result in the breach of any provision of the organizational

8    documents of Medvend Holdings… or (c) conflict with, result in any breach of, constitute a

9    default (or event which with the giving of notice or lapse of time, or both, would become a

10   default) under, require any consent under, or give to others any rights of termination,

11   amendment, acceleration, suspension, revocation or cancellation of, any note, bond,

12   mortgage or indenture, contract, agreement, lease, sublease, license, permit, franchise or

13   other instrument or arrangement to which the Sellers or Medvend Holdings is a party,

14   except, in the case of clauses (b) and (c), as would not materially and adversely affect the

15   ability of the Sellers to carry out their obligations under, and to consummate the transactions

16   contemplated by this Agreement. "

17        16.    In fact, the Medvend organizational documents precluded the Sellers from

18   transacting business with their "Transferred Equity Interests."

19        17.    In fact, a Promissory Note was subject to default and acceleration as a result

20   of the Sellers transacting business with their "Transferred Equity Interests."

21

22

-5-

18.  Medbox, Inc. provided written notice of the termination of the Agreement to the Sellers in accord with the notice provisions of the Agreement.

19.  The Agreement permits Medbox to, notwithstanding the termination of the Agreement, pursue a claim for breach of the Agreement.

20.  Medbox seeks to recover the $600,000 it paid over to defendants, or on their account and at their direction, from the defendants for their breaches of the Agreement, specifically including (quoted language from Sellers' representations and warranties section of the Agreement, Doc. 1, Exh. 1):

a.  On information and belief, the Sellers did not have the "legal capacity, power and authority to enter into, execute and deliver this Agreement and the Employment Agreements to which such Sellers are a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby".

b.  On information and belief, Medvend Holding did not have "all necessary corporate power and authority to enter into this Agreement and to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby."

c.  On information and belief, the Agreement did not constitute "a legal, valid and binding obligation of the Sellers…"

d.  On information and belief, all of the "issued and outstanding Transferred Equity Interests" are not owned by the Sellers.

e.  On information and belief, all of the "Transferred Equity Interests" are not "fully paid and non-assessable, free and clear of any preemptive rights."

f.  On information and belief, it is not true that there are "no options, warrants, convertible securities or other rights, agreements, arrangements or commitments relating to the Equity Interests or obligating either the Sellers or the Medvend Entities to issue or sell any Equity Interests, or any other interest in, any Medvend Entity."

g.  On information and belief, it is not true that the "execution, delivery and performance by the Sellers of this Agreement does not and will not (a) violate, conflict with or result in the breach of any provision of the organizational documents of Medvend Holdings, (b) conflict with or violate any Law or Governmental Order applicable to Medvend Holdings or its respective Assets, properties or businesses or (c) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage or indenture, contract, agreement, lease, sublease, license, permit, franchise or other instrument or arrangement to with the Sellers or Medvend Holdings is a party, except, in the case of clauses (b) and (c), as would not materially and adversely affect the ability of the Sellers to carry out their obligations under, and to consummate the transactions contemplated by this Agreement."

1    21.    Plaintiff Medbox, Inc. has notified defendants that the Agreement has been

2  terminated and has demanded it monies back immediately. A true and correct copy of that

3  demand letter, without its attachments, is attached to the Complaint (Doc. 1) in this matter

4  as Exhibit 3.

5    22.    Plaintiff Medbox, Inc. has been damaged by the defendants' breaches of the

6  Agreement in the amount of $600,000, plus its attorneys' fees, costs, prejudgment interest

7  and out of pocket costs.

8                    **Second Claim For Relief: Conversion.**

9    23.    Medbox's $600,000 transferred to defendants, or at their direction or order, on

10  the basis of the Agreement.

11    24.    No Closing under the terms of the Agreement occurred.

12    25.    The Agreement has been terminated.

13    26.    Defendants have not returned Medbox's $600,000, despite its demand that

14  they do so.

15    27.    Defendants' failure and or refusal to return Medbox's $600,000 constitutes

16  conversion of said funds by defendants.

17    28.    Additionally, on information and belief, defendants still controlled $76,000 of

18  $600,000 paid in consideration of the sale at the time the Agreement was terminated.

19    29.    Defendants refused to turn back over to Medbox the $76,000 in their

20  possession, custody and or control at the time of Agreement termination despite Medbox's

21  demand that defendants do so.

22

30.     Medbox made a supplemental written demand for return of the $76,000 that was still in defendants' possession, custody and or control at the time the Agreement was terminated but that supplemental written demand was rejected.

31.     Plaintiff Medbox, Inc. has been damaged by defendants' conversion of its $600,000.

32.     On information and belief, defendants have undertaken an attempt to "cure" their breaches of the Agreement, above.

33.     Medbox has informed defendants that it not only disputes the defendants' ability to "cure" under the facts and circumstances, but also that other governing legal rules mandate the rescission of the transactions contemplated by the Agreement and the related repayment over to Medbox of the consideration Medbox paid the defendants for the Transferred Equity Interests (identified hereinabove) notwithstanding any effort to "cure" by defendants.

34.     Accordingly, even if, despite plaintiff's allegations herein above and the proofs submitted thereon during the litigation of this matter in the ordinary course, it is determined that defendants cured their breaches the Agreement, defendants have nonetheless violated provisions of the Arizona Securities Act as alleged herein below.

### Third Claim for Relief: Violation of Arizona Securities Act.

**ARS §44-1991(A)(1)(2) and/or (3) (primary liability)**
**ARS §44-2003(A) (extended primary liability for participants and inducers)**
**ARS §44-2001(A) (remedy section)**
**ARS §44-2002(A) (remedy section)**

35.     Plaintiff incorporates all allegations of this Amended Complaint herein.

36.     ARS §44-1991(A) sets forth the primary anti-fraud liability provisions of the Arizona Securities Act ("ASA").

37.     ARS §44-1991(A)(1) provides in substantial part: "It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, …directly or indirectly to do any of the following:… 1. Employ any device, scheme or artifice to defraud."

38.     Defendants violated ARS §44-1991(A)(1) because defendants knowingly did the following:

     a.  Affirmatively made the statements, warranties, representations, promises and agreements they made in the Agreement (Doc. 1, Exh.1);

     b.  Affirmatively participated, directly and or indirectly, in the preparation of the press release dated March 15, 2013 (Doc. 1, Exh. 1, Exh. B thereto);

     c.  Omitted to disclose to plaintiff Medbox that defendant Sellers did not disclose to all of Medvend's members (*e.g.,* Envy Tech Fund I, LLC) the full terms of the Agreement until April 16, 2013;

     d.  Omitted to disclose to plaintiff Medbox that defendants Sellers had materially and inaccurately misrepresented the terms of the Agreement in a March 18, 2013 letter from their counsel Ari Berris to a member of Medvend (*e.g.*, Envy Tech Fund I, LLC);

-10-

e.  Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox is a violation of the terms and conditions of the Medvend Operating Agreement and or the Membership Interest Issuance, Limitation and Governance Agreement and or the Michigan Limited Liability Company Act;

f.  Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox  is an event of default under the terms of a promissory note between Medvend and Envy-Medvend Loan Fund, LLC;

g.  Omitted to disclose the contents of the Envy Tech Fund I, LLC letter (and attachment) dated March 8, 2013[1] stating, among other things, that Envy Tech Fund I, LLC was thereby "REVOKING any acknowledgement that the telephone conversation of March 6, 2013 constituted proper and effective 'notice' with respect to a forthcoming membership interest sale" ( Doc. 1, Exh. 2, Exh. D thereto);

h.  Omitted to disclose the contents of the Envy Tech Fund I, LLC letter dated March 21, 2013 stating, among other things, that "[w]hile the letter [dated March 18, 2013 from Ari Berris] states that it is 'notice', it is not proper an effective notice and cannot be considered as 'notice' as required by the

---

[1]  The Agreement is dated March 12, 2013. Doc. 1, Exh. 1.

-11-

operating agreement and other agreements between the parties…" ( Doc. 1, Exh. 2, Exh. D thereto)[2];

i.  Omitted to disclose the contents of the Envy Tech Fund I, LLC letter dated April 3, 2013 ( Doc. 1, Exh. 2, Exh. D thereto)[3];

j.  Omitted to disclose all terms of the First Amended Operating Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. A thereto);

k.  Omitted to disclose all terms of the First Amendment to Membership Interest Issuance, Limitation and Governance Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. C thereto);

l.  Omitted to disclose all terms of the Promissory Note dated June 21, 2012 (Doc. 1, Exh. 2, Exh. G thereto);

m. Engaged in manipulative conduct intended to obtain a large quantity of Medbox's valuable stock, which conduct included a scheme to keep from plaintiff Medbox negative information about the then-current financial condition and structure of non-party Medvend while at the same time selling their interests in Medvend without proper lender and equity holder approval, and in circumstances where such approval was known by defendants to be specifically challenged (both before the date of the Agreement and after the date of the Agreement), without disclosing to plaintiff Medbox any of those  circumstances, thereby attempting to enrich

---

[2]   This is conduct after the date of the Agreement.
[3]   This is conduct after the date of the Agreement.

1    themselves and, in so doing, solve tax problems that at least two of them

2    had (also undisclosed to Medbox), when disclosure of these concealed

3    circumstances and transactions would have foreseeably led Medbox to

4    decline the transaction had it known the truth of what was hidden from it

5    by defendants.[4]

6    39.    ARS §44-1991(A)(2)  provides in substantial part: "It is a fraudulent practice

7    and unlawful for a person, in connection with a transaction or transactions within or from

8    this state involving an offer to sell or buy securities, or a sale or purchase of securities,

9    …directly or indirectly to do any of the following:… 2. Make any untrue statement of

10   material fact, or omit to state any material fact necessary in order to make the statements

11   made, in the light of the circumstances under which they were made, not misleading."

12   40.    Defendants violated ARS §44-1991(A)(2), and are jointly and severally liable,

13   by knowingly[5]:

14   a.    Affirmatively made the statements, warranties, representations,

15   promises and agreements they made in the Agreement (Doc. 1, Exh.1);

16   b.    Affirmatively participated, directly and or indirectly, in the preparation

17   of the press release dated March 15, 2013 (Doc. 1, Exh. 1, Exh. B thereto);

18

19   _____

[4]    This subparagraph refers to conduct both before and after the date of the Agreement.

20   [5]    Plaintiff seeks a determination of proportionate fault if joint and several liability is not proven; alternatively, therefore, to the extent that defendants assert that the above-

21   alleged representations and omissions were innocent misrepresentations and therefore made without scienter, plaintiff notes that it has alleged that the misrepresentations were material

22   and misleading.

c.      Omitted to disclose to plaintiff Medbox that defendant Sellers did not disclose to all of Medvend's members (*e.g.,* Envy Tech Fund I, LLC) the full terms of the Agreement until April 16, 2013;

d.      Omitted to disclose to plaintiff Medbox that defendants Sellers had materially and inaccurately misrepresented the terms of the Agreement in a March 18, 2013 letter from their counsel Ari Berris to a member of Medvend (*e.g.,* Envy Tech Fund I, LLC);

e.      Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox is a violation of the terms and conditions of the Medvend Operating Agreement and or the Membership Interest Issuance, Limitation and Governance Agreement and or the Michigan Limited Liability Company Act;

f.      Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox is an event of default under the terms of a promissory note between Medvend and Envy-Medvend Loan Fund, LLC;

g.      Omitted to disclose the contents of the Envy Tech Fund I, LLC letter (and attachment) dated March 8, 2013 stating, among other things, that Envy Tech Fund I, LLC was thereby "REVOKING any acknowledgement that the telephone conversation of March 6, 2013 constituted proper and effective

-14-

'notice' with respect to a forthcoming membership interest sale" ( Doc. 1, Exh. 2, Exh. D thereto);

      h.     Omitted to disclose all terms of the First Amended Operating Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. A thereto);

      k.     Omitted to disclose all terms of the First Amendment to Membership Interest Issuance, Limitation and Governance Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. C thereto); and,

      l.     Omitted to disclose all terms of the Promissory Note dated June 21, 2012 (Doc. 1, Exh. 2, Exh. G thereto).

41.     The foregoing representations and omissions would have been material to a reasonable investor.

42.     The foregoing representations and omissions were misleading.

43.     ARS §44-1991(A)(3) provides in substantial part: "It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, …directly or indirectly to do any of the following:… 3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."

44.     Defendants violated ARS §44-1991(A)(3) by:

      a.     Affirmatively made the statements, warranties, representations, promises and agreements they made in the Agreement (Doc. 1, Exh.1);

b.     Affirmatively participated, directly and or indirectly, in the preparation of the press release dated March 15, 2013 (Doc. 1, Exh. 1, Exh. B thereto);

c.     Omitted to disclose to plaintiff Medbox that defendant Sellers did not disclose to all of Medvend's members (*e.g.,* Envy Tech Fund I, LLC) the full terms of the Agreement until April 16, 2013;

d.     Omitted to disclose to plaintiff Medbox that defendants Sellers had materially and inaccurately misrepresented the terms of the Agreement in a March 18, 2013 letter from their counsel Ari Berris to a member of Medvend (*e.g.,* Envy Tech Fund I, LLC);

e.     Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox is a violation of the terms and conditions of the Medvend Operating Agreement and or the Membership Interest Issuance, Limitation and Governance Agreement and or the Michigan Limited Liability Company Act;

f.     Omitted to disclose to plaintiff Medbox that selling their membership interests (identified in the Agreement as "Transferred Equity Interests") to plaintiff Medbox is an event of default under the terms of a promissory note between Medvend and Envy-Medvend Loan Fund, LLC;

g.     Omitted to disclose the contents of the Envy Tech Fund I, LLC letter (and attachment) dated March 8, 2013 stating, among other things, that Envy

Tech Fund I, LLC was thereby "REVOKING any acknowledgement that the telephone conversation of March 6, 2013 constituted proper and effective 'notice' with respect to a forthcoming membership interest sale" ( Doc. 1, Exh. 2, Exh. D thereto);

h.       Omitted to disclose all terms of the First Amended Operating Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. A thereto);

k.       Omitted to disclose all terms of the First Amendment to Membership Interest Issuance, Limitation and Governance Agreement of Medvend Holdings, LLC (Doc. 1, Exh. 2, Exh. C thereto);

l.       Omitted to disclose all terms of the Promissory Note dated June 21, 2012 (Doc. 1, Exh. 2, Exh. G thereto); and,

m.       Engaging in transactions and a course of business with Medbox leading to the Agreement, and including the making of the Agreement itself, which operated as a fraud and or deceit in that Medbox was intentionally led to falsely believe that Sellers had full authority to make the Agreement, that there were no challenges to their authority to make the Agreement, there were no limitations concerning their authority to make the Agreement, there would be no breaches of any agreement which would occur as a result of Sellers making the Agreement, Sellers knew or reasonably should have known that Medbox would rely and did rely to its detriment on Sellers' representations and omissions of material fact and misleading conduct in (among other things)

-17-

issuing a press release on March 15, 2013, executing the Agreement on March 12, 2013, and not terminating the Agreement sooner given that Medbox was not aware of the undisclosed circumstances as alleged herein, thereby causing Medbox to issue the press release and sign the Agreement, resulting in its claims as alleged herein.

45.   Plaintiff seeks remedies under each ARS §44-2001(A) and ARS §44-2002(A), which provide as follows, respectively:

a.   ARS §44-2001(A): "A sale or contract for sale of any securities to any purchaser in violation of section 44-1841 or 44-1842 or article 13 of this chapter is voidable at the election of the purchaser, and the purchaser may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities."

b.   ARS §44-2002(A): "A purchase or contract for purchase from a seller of securities made in violation of section 44-1842, 44-1991 or 44-1994 is voidable at the election of the seller of the securities, and the seller may bring an action in a court of competent jurisdiction to recover the amount

1          of the seller's damages, with interest, taxable court costs and reasonable

2          attorney fees."

3          46.    ARS §44-2003(A) provides for extended primary liability under the anti-fraud

4 provisions of the ASA as follows: "Subject to the provisions of this section, an action

5 brought under section 44-2001, 44-2002 or 44-2032 may be brought against any person,

6 including any dealer, salesman or agent, who made, participated in or induced the unlawful

7 sale or purchase, and such persons shall be jointly and severally liable to the person who is

8 entitled to maintain such action."

9          47.    Defendants violated ARS §44-2003(A) by participating in the sales of

10 securities as set forth in the Agreement, planned to benefit and did personally benefit as set

11 forth in the Agreement, and encouraged or induced the sale Agreement by their

12 misrepresentations and omissions of material fact and other misconduct as alleged herein.

13          48.    ARS §44-2000 sets forth the "contrary stipulations void" provision of the

14 ASA, and provides as follows: "Any condition, stipulation or provision binding any person

15 acquiring any security to waive compliance with this chapter or chapter 13 of this title or of

16 the rules of the commission is void."

17          49.    Accordingly, to the extent that defendants rely upon any provision of the

18 Agreement, or condition or stipulation otherwise, in an effort to relieve themselves of

19 compliance with the antifraud provisions of the ASA, said reliance is precluded by ARS

20 §44-2000.

21

22

50.     Plaintiff did not know of the untrue statements of fact and the material omissions of fact made by defendants until just before the filing of this civil action, and justifiably relied on defendants' representations and omissions (given the written and signed nature of the representations).

**Fourth Claim for Relief:**
**Violation of Arizona Securities Act, ARS §44-1998(A) (Oral Communication)**

51.     Plaintiff incorporates all allegations of this Amended Complaint herein.

52.      ARS §44-1998(A) provides as follows: "In any case relating to securities offered or sold within or from this state, any person who offers or sells a security by means of a prospectus or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading is liable to the purchaser of the security from that person, as long as the purchaser did not know of the untruth or omission, as provided by this section. The purchaser may bring an action in any court or administrative forum of competent jurisdiction to recover the consideration paid for the security with interest, minus the amount of any income received from the security, on the tender of the security, or for damages if the purchaser no longer owns the security. The person has the burden of proof that the person did not know and in the exercise of reasonable care could not have known of the untruth or omission. If the person meets the burden of proof, the person is not liable. This subsection applies notwithstanding any exemption under section 77c of the securities act of 1933 (15 United States Code sections

77a through 77bbbb), except for an exemption under subsection A, paragraph 2 of that section, and notwithstanding any exemption under article 4 or 7 of this chapter, except for section 44-1843, subsection A, paragraph 1."

53.     Defendants violated ARS §44-1998(A) by selling securities within Arizona by means of oral communications that included untrue statements of material fact concerning their authority to enter into the transaction, omitted to state material facts necessary in order to make their statements about their authority to enter into the transaction, in light of the circumstances under which they were made, not misleading.

54.     Plaintiff did not know of the untrue statements of fact and the material omissions of fact made by defendants until just before the filing of this civil action, and justifiably relied on defendants' representations and omissions.

**Fifth Claim for Relief: Fraudulent Concealment.**

55.     Plaintiff incorporates all allegations of this Amended Complaint herein.

56.     Defendants engaged in fraudulent concealment as alleged herein below.

57.     Defendants knowingly and intentionally concealed material facts from plaintiff, as alleged herein above. The concealment by defendants is tantamount to an affirmative statement of the nonexistence of the matter and thus constitutes a false representation of material fact that defendants knew to be false when made. Defendants intended that plaintiffs rely on their affirmative statements as alleged herein, in making its decision whether to enter into the Agreement.

58.     Plaintiff relied on the accuracy and completeness of the information provided by defendants, had a right to rely on that information, and was ignorant of the true facts which were later revealed as alleged herein.

### Sixth Claim for Relief: Negligent Misrepresentation.

59.     Plaintiff incorporates all allegations of this Amended Complaint herein.

60.     Defendants engaged in negligent misrepresentation as alleged herein below.

61.     Defendants provided false or incorrect information and omitted or failed to disclose material information as alleged herein.

62.     Defendants failed to exercise reasonable care in communicating said information to plaintiff.

63.     Plaintiff was justified in its reliance on the information and omissions supplied by defendants.

### Seventh Claim for Relief: Violation of Arizona Consumer Fraud Act, ARS §44-1522.

64.     Plaintiff incorporates all allegations of this Amended Complaint herein.

65.     Defendants violated the Arizona Consumer Fraud Act ("ACFA") as alleged herein below.

66.     As alleged herein, defendants used deception, used a deceptive act or practice, used fraud, used false pretenses, made false promises, made misrepresentations and/or concealed, suppressed or omitted material facts in connection with the sale of stock as described herein.

67.     Defendants intended that plaintiff would rely on such deception, deceptive acts or practices, fraud, false pretenses, false promises, misrepresentations and or concealed, suppressed or omitted material facts.

68.     Plaintiff has suffered damages as a result of its reliance on defendants' deception, deceptive acts or practices, fraud, false pretenses, false promises, misrepresentations, concealment, suppression, or omission of material fact, as alleged herein, in an amount to be determined by the trier of fact.

69.     Plaintiff is entitled to recover attorneys' fees and costs pursuant to ARS Section 44-1534.

WHEREFORE, plaintiff Medbox, Inc. demands judgment in its favor and against defendants, and each of them:

A.     For the $600,000 it paid over pursuant to the Agreement;

B.     For its out of pocket costs and expenses;

C.     For full and complete rescission, including (if applicable) rescissory damages, interest and attorneys' fees as provided for by the ASA, and all remedies available pursuant to ARS §44-2001(A) and ARS §44-2002(A);

D.     For pre and post judgment interest;

E.     For its attorneys' fees and costs of suit as may be recoverable in this action; and,

F.     For any other relief in its favor and against defendants as may be appropriate in the circumstances.

-23-

1     RESPECTFULLY submitted this 29th day of May, 2013.

2                                            **CONANT LAW FIRM, PLC**

3                                            By:  ____/s/Paul A Conant_____
                                             Paul A. Conant
4                                            2398 East Camelback Road, Suite 925
                                             Phoenix, Arizona  85016
5                                            Counsel for plaintiff Medbox, Inc.

6                                    CERTIFICATE OF SERVICE

7          I hereby certify that on May 29th, 2013, I electronically transmitted the attached
8    document to the Clerk's Office using the CM/ECF System for filing and electronic service.

9          On this 29th day of May, 2013, a copy was served by electronic delivery and/or
10   mailed through the CM/ECF System, or mailed, to:

11   Matthew P. Fischer, Esq.
     Robert I. Schwimmer, Esq.
12   Snell & Wilmer, LLP
     One Arizona Center
13   400 East Van Buren
     Phoenix, Arizona 85004-2202
14   Attorneys for defendants

15   /s/ Lynne Bebout____

16

17

18

19

20

21

22
                                         -24-