WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medbox Incorporated, a Nevada corporation,<br><br>              Plaintiff,<br><br>v.<br><br>Darryl B. Kaplan; Claudio Tartaglia; and Eric Kovan;<br><br>              Defendants. | No. CV-13-00949-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Doc. 11.) For the following reasons the motion is granted in part and the action is transferred to the Eastern District of Michigan.[1]

**BACKGROUND**

This action arises out of an Agreement by Plaintiff Medbox, Inc. to purchase a 50% interest in Medvend Holdings, LLC ("Medvend") from the Defendants Darryl B. Kaplan, Claudio Tartaglia, and Eric Kovan.[2] (Doc. 1, Ex. 1.) After making payments of

---

[1] Medbox's request for oral argument (Doc. 12) is denied because the Parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] When considering a challenge to venue, a court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–39 (9th

$600,000, Medbox learned of an action brought by a third party against the Defendants. (Doc. 10 at 4–5.) As a result, Medbox filed this action seeking a return of its payment and rescission of the Agreement. (*Id.* at 23.)

Medbox is incorporated in Nevada but has offices in Arizona and California. (*Id.* at 2.) Medbox's CEO, Dr. Bruce Bedrick, lives and maintains his office in Arizona. (Doc. 12, Ex. 1.) Medbox's founder, Vincent Mehdizadeh, lives and maintains his office in California. (Doc. 11 at 3.)

The Defendants are all residents of Michigan who have never lived in Arizona or owned property here. (*Id.* at Ex. A–C.) None of them has been to Arizona in over a decade, and they made no visit to Arizona in connection with this or any other business transaction. (*Id.*) Defendant Kaplan primarily negotiated the Agreement from Michigan over the phone and email with Mehdizadeh in California. (*Id.*) Defendant Tartaglia was also involved with the negotiation, and Tartaglia and Kaplan met with Mehdizadeh in California and Nevada. (*Id.*) Defendant Kovan was not directly involved in the negotiations. (*Id.*)

Defendants did have some contacts with Arizona in connection with this Agreement. In December 2012, Defendant Kaplan communicated with Bedrick in Arizona through several phone calls and emails. (Doc. 12 at 13–52.) They entered into a Non-Disclosure Agreement which listed Medbox's principal place of business as being in Arizona. (*Id.* at 15–17.) These early negotiations included discussions about the price of the deal and an exchange of information about Medvend's business. (*Id.* at 13–52.) Kaplan made these communications at least partly in his capacity as CEO of Medvend, and Tartaglia also received many of these emails as the COO. (*Id.*)

---

Cir. 2004). When considering a challenge to personal jurisdiction, where conflicts exist between the facts contained in the parties' affidavits, depositions, and other discovery materials, conflicts must resolved in the non-movant's favor. *See Rio Props. Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). To the extent they are uncontroverted by Defendants' affidavit and exhibits, the Court has accepted the allegations in Medbox's Amended Complaint and other filings as true and made all reasonable inferences from them.

After these initial negotiations, Kaplan and Tartaglia met with Mehdizadeh, who became the primary point of contact for the negotiations. (*Id.* at 33; Doc 11, Ex. A.) Those meetings and communications did not involve Arizona. (Doc 11, Ex. A.) In March 2012, after the Agreement had been signed but apparently before it had formally closed, Kaplan again began to have phone calls and emails with Bedrick in Arizona. (Doc. 12 at 53–103.) Kaplan asked Bedrick, in Arizona, to wire $300,000 and provided him with the bank routing number. (*Id.* at 53–57.) Bedrick told Kaplan that he was "not directly overseeing this transaction" and that he would forward the request to Mehdizadeh. (*Id.* at 58.) The $600,000 payments were eventually sent from the California office under Mehdizadeh's direction. (Doc 11, Ex. A.)

Kaplan's later communications with Bedrick in Arizona also involved changes to Medvend's website and a discussion about handling referrals. (Doc. 12 at 53–103.) Bedrick introduced Kaplan to another person in Arizona who was part of a team that was going to be helping to improve the website. (*Id.*) That team was also located in Arizona and Kaplan had communications with a member of that team. (*Id.*) There were also communications about a press release and about meetings with reporters to publicize their new deal. (*Id.*) Finally, there were communications involving Bedrick, Mehdizadeh, Kaplan, and Tartaglia about winding down Medvend, LLC as part of the transition to Medvend, Inc. (*Id.*) Again, in all of these communications Kaplan was at least partly acting in his capacity as CEO of Medvend and Tartaglia received many of these emails as the COO. (*Id.*)

In May, after hearing about the deal from the press release and news coverage, the third parties filed their lawsuit against the Defendants. (Doc. 1, Ex. 2.) As a result of the lawsuit, Medbox sent a letter to the Defendants seeking to end the Agreement. (Doc. 1, Ex. 3.) This letter noted that the closing of the Agreement had never occurred. (*Id.*) Defendants had hired Arizona legal counsel to draft the Agreement, and the Agreement specified that the closing would occur at the counsel's office in Arizona or at another place mutually agreed upon. (*Id.*, Exs. 1, 3.) The letter also laid out the issues now

presented in this action, which is a dispute over whether the Agreement was ever binding and whether it, and the payments made under it, should be unwound.

Defendants filed their Motion to Dismiss arguing first that venue is improper and additionally that this Court has no personal jurisdiction over them. Defendants ask that the action be dismissed or transferred to the District Court for the Eastern District of Michigan. Defendants also seek attorney's fees and other costs for their motion.

## DISCUSSION

### I. Legal Standard

Medbox argues that venue is proper under 28 U.S.C. § 1391(b)(2), (Doc. 10 ¶ 6), which provides venue in a diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." In applying this statute, the adjective "substantial" must be taken seriously. "[S]ignificant events or omissions material to the plaintiff's claim must have occurred" here. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

"Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005) (citing *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980)); *see also Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When deciding a challenge to venue, the pleadings need not be accepted as true, and the district court may consider facts outside of the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

### II. Venue Is Not Proper in the District of Arizona

Venue in this Court is improper because neither a substantial part of the property at issue nor a substantial portion of the events or omissions occurred in this state. The property at issue in the Agreement is the purchased membership interest in Medvend and the $600,000 transferred pursuant to the Agreement. Medvend does business in Michigan and none of its assets or property is in Arizona. The money paid was transferred from

California to Michigan. Medbox has not demonstrated that any of the property at issue, let alone a substantial portion of it, is located in Arizona.

Instead Medbox argues that a substantial portion of the events or omission occurred here in Arizona. The primary events are the entering into of the Agreement and the transfer and retention of the money. The alleged omissions are the Defendants' failure to inform Medbox about the claims that the third parties raised in the other action. The communications between Defendants and Medbox or others in Arizona that occurred after the signing of the agreement and transfer of the money are not relevant because they did not give rise to the complaint.

None of the events or omissions involved the Defendants being physically present in Arizona. Some of the early negotiations occurred by phone and email with the CEO in Arizona, but the finalization of the agreement involved communications with Mehdizadeh in California and meetings in Nevada and California. Defendant Kaplan led these communications but Defendant Tartaglia also received some of the emails and attended the meetings as well. Defendant Kovan was not directly involved with any of the negotiations. The only action or omission by Kovan appears to have been the signing of the Agreement in Michigan. The other Defendants also signed in Michigan, and it was in Michigan that they have retained or spent the money received. Some of that money was originally requested from the CEO in Arizona, but it was actually sent by Mehdizadeh from California. The Agreement was drafted by counsel in Arizona, but it was based on negotiations that primarily occurred outside of Arizona, and it was signed by both sides outside of Arizona. The formal closing of the Agreement was schedule to occur in Arizona, but the time and place was subject to change and it never occurred. The fact that one end of some of the phone calls and emails was in Arizona is not enough to establish that a substantial part of the events or omissions occurred in Arizona.

Finally, Medbox argues that the effects of the omissions were clearly felt in Arizona. However, the statute directs the Court to consider "events or omissions" and not impact. It is true that "the locus of the injury [i]s a relevant factor" in deciding proper

venue. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *see also Fiore v. Walden*, 688 F.3d 558, 587–88 (9th Cir. 2011) *cert granted*, 133 S.Ct. 1493 (2013). But only as one factor or one event. Again, if the locus of the injury was the sole and decisive factor, then the personal jurisdiction and venue inquiries would meld into one minimum-contacts test. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003); b*ut see Astro–Med, Inc. v. Nihon Kohden Am.*, Inc., 591 F.3d 1, 12 (1st Cir. 2009) (focusing on where the harm was felt rather than where the actions occurred). Plaintiff's home forum would always win, and that is not the law. The law specifies a different line of inquiry for personal jurisdiction (minimum contacts) and venue (whether "a substantial part of the events or omissions" occurred in the forum state).

It is worth noting that the Supreme Court heard arguments earlier this month in an appeal of *Fiore v. Walden* and one of the issues in that case is the question of whether venue is proper in a state where the effects are felt. Whether or not the Supreme Court adopts a test requiring greater consideration of effects, the outcome in this case will not change. Even if venue could be legally established by the impact or injury, it is not clear factually in this case what portion of the injury was felt in Arizona and what portion in California. The money came from the California office of Medbox and there is no explanation of why the effect from the loss of that money would have been substantially felt in Arizona.

Based on the allegations of the Amended Complaint, the affidavits, and the other exhibits submitted, the Court cannot conclude that a substantial part of the events or omissions occurred in Arizona. Venue in Arizona is improper because neither the property nor the events and omissions requirements from 28 U.S.C. § 1391(b)(2) is met.

**III. Transfer.**

Given the lack of venue, the Court has discretion to dismiss this case or, in the interest of justice, transfer it to a district where it could have been brought. 28 U.S.C. § 1406(a). The Court will exercise its discretion to transfer this case to the Eastern District of Michigan, where most of the events and omissions giving rise to these claims

occurred. Although both sides would prefer a different outcome, neither objects to the propriety of this transfer.

**IV. Costs**

Defendants also ask for attorney's fees and related expenses, and costs under 28 U.S.C. §§ 1919–1920, Federal Rule of Civil Procedure 54(d), and Ariz. Rev. Stat. § 12-341.01. 28 U.S.C. § 1919 authorizes courts to order the payment of costs when an action is dismissed. Here, the action is being transferred and not dismissed, and this Court chooses not to award costs under § 1919.

Rule 54(d)(1) contains a presumption that costs other than attorney's fees will be awarded to the prevailing party. "[A] defendant is not a "prevailing party" for Rule 54(d) purposes when an action is dismissed for jurisdictional reasons . . . ." *Harris v. Stonecrest Care Auto Ctr., LLC*, 559 F. Supp. 2d 1088, 1090 (S.D. Cal. 2008) (citing *Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003)). Here, the matter is simply being transferred for jurisdictional reasons to an appropriate venue. There is no prevailing party and costs will not be awarded under Rule 54(d).

Rule 54(d)(2) provides the procedure for requesting attorney's fees. Arizona law authorizes a discretionary award of attorneys' fees in contract actions, but only to successful parties. Ariz. Rev. Stat. § 12–341.01(A). Medbox has not succeeded in any contract action and no attorney's fees will be awarded.

**IT IS THEREFORE ORDERED** that Defendant Medbox, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 11) is **granted in part**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to transfer this action to the Eastern District of Michigan.

Dated this 19th day of November, 2013.

/s/ A. Murray Snow
/G. Murray Snow
United States District Judge